**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

FILED
2010 APR -1  PM 4: 51
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

| | | |
|---|---|---|
| **DANA E. SHOCHED AND** | § | |
| **AND DEBORAH LEE INGLES** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NUMBER:** |
| | § | **A10CA 228 SS** |
| **PAN AMERICAN LABORATORIES,** | § | |
| **L.L.C., AND PAMLAB, L.L.C.** | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

TO THE HONORABLE COURT:

Plaintiffs, Dana E. Shoched and Deborah Lee Ingles ("Plaintiffs") file their *Original Complaint* and would show as follows:

**I.**

**PARTIES**

Plaintiff, Dana Shoched, is a sales representative for Pan American Laboratories/Pamlab, LLC. Ms. Shoched resides in Lambertville, Michigan.

Plaintiff, Deborah Lee Ingles, is the Director of Human Resources for Pan American/Pamlab. Ms. Ingles resides in Kentwood, Louisiana.

Pamlab, LLC (and its subsidiary Pan American Laboratories, LLC) is a nation-wide pharmaceutical manufacturer and distributor with its principal place of business/corporate headquarters located at 4099 Highway 190, Covington, Louisiana 70433. Despite conducting business throughout Texas, according to the Texas Secretary of State, Pamlab does not maintain a Texas registered agent for service of process. Therefore, pursuant to the Texas Long-Arm Statute, Pan American and Pamlab may be

1

served through the Secretary of State.  Service on the Secretary of State is requested at this time.

## II.

## JURISDICTION

The United States District Court for the Western District of Texas has jurisdiction over Defendants.  Although Defendants' "corporate headquarters" or "home office" is in Louisiana, they employ numerous individuals to work as pharmaceutical sales representatives and managers throughout Texas.  Defendants transact a significant amount of business in Texas and place a large inventory of their products into Texas' stream of commerce.  Further, and perhaps more importantly, Defendants were subject to suit in the Western District (Austin Division) in Cause No. 1:07CV00924 LY; *Carleen Black and Kace Whitaker v. Pamlab, LLC, et al*.  The *Black* case involving allegations of discrimination and retaliation under Title VII was tried in June 2009 before Hon. Lee Yeakel.  Both Ms. Ingles and Ms. Shoched testified at trial in the *Black* case (Ms. Ingles by deposition and Ms. Shoched live), and their trial testimony forms a significant part of the basis for their retaliation claims which will be discussed in detail below.  There is, therefore, no question that Defendants possess the requisite "minimum contacts" needed to subject them to the jurisdiction in a United States District Court in the Western District of Texas, Austin Division.

## III.

## VENUE

Pursuant to 28 U.S.C. § 1391(b) and (c), venue is proper in the Western District (Austin Division) because a substantial part of the events giving rise to this claim

(namely the trial testimony in the *Black* case referenced above) occurred in Travis County.  Further, although Pan American/Pamlab is a limited liability company, under federal law, an LLC is treated like a corporation for venue purposes, meaning that the LLC can be sued in any judicial district where the LLC does business and would be subject to personal jurisdiction.  *See* 28 U.S.C. § 1391(c); *see also Injection Research Specialists v. Polaris Industries, L.P.*, 759 F. Supp. 1511, 1513-14 (D. Colorado 1991) (holding that "partnerships and related entities to corporations" are subject to the venue provisions of section 1391 and are "subject to suit wherever they do business").

## IV.

## FACTUAL BASIS FOR PLAINTIFFS' CLAIMS

### A.    Defendants' Illegal Actions Involving Dana Shoched

Dana Shoched began working as a sales representative for Pan American/Pamlab in 1999.  Despite consistently being one of Pamlab's top nationwide performers, Ms. Shoched has continually endured (and continues to endure) a pattern of abuse, discrimination, and humiliation to which no person should ever be subjected.

### 1.    Title VII Gender Discrimination (Including Sexual Harassment)

During Ms. Shoched's early employment with Pamlab, Sam Camp told her that she would only last at the company until she got married and "found a man to take care of her."  Also early in Ms. Shoched's Pamlab tenure, Scott Young was assigned to supervise Ms. Shoched's district.  Ms. Shoched was the only female in the district, and because Scott Young refused to go on "ride alongs" with a woman, Pamlab sent Scott Davis and Brian Barcelona to do the "ride alongs."  While Scott Davis and Brian Barcelona were

3

supervising Ms. Shoched, they told her that she was taking a job away from a man and that she was keeping a man from being able to feed his family. They further stated that women are supposed to be at home "barefoot and pregnant, teaching Bible study, home-schooling kids, keeping the house clean, and keeping the man happy." These types of comments have continued to be made, along with others.

Supervisors and national managers have repeatedly told Ms. Shoched that Pamlab's preference is to only hire and promote men. During her time with Pamlab, Ms. Shoched has broken every sales record imaginable. Yet, she has been passed over time and time again for promotion, all while men with less experience and lower sales numbers have been promoted to district and national level manager positions.

Ms. Shoched has asked numerous times to be promoted, but all such promotions have been given to men. She has also asked to be involved in the training of new sales representatives, but has likewise been denied. These positions routinely go to men.

During September 2007, Ms. Shoched asked Kenny Ladner if she was in the running to be promoted to the District Manager position in the Columbus, Ohio district. Mr. Ladner stated, "God no. That will never happen. You will never be promoted no matter how many sales records you break or what you have accomplished in the past." Ms. Shoched later told Mark Fluitt that she would love to become a national account manager. Mr. Fluitt stated, "that will never happen." There are currently no female district managers in outside sales and no female managers in national accounts. Pamlab did, however, promote a male to the vacant national account manager after Ms. Shoched's conversation with Mr. Fluitt.

Ms. Shoched has also been told by managers and supervisors to "grow a pair" and to act more like a man. Stephen Camp (National level manager and director) has even asked Ms. Shoched to attempt to see Sharon Cavazos (a former Pamlab sales representative) naked so Ms. Shoched could verify if Ms. Cavazos was transgendered. Stephen Camp also told Ms. Shoched women should not work for Pamlab and that she was taking a job away from a man.

Pamlab has also fostered a sexually hostile environment for Ms. Shoched and other female Pamlab sales representatives. This hostile environment is severe and it permeates all aspects of Ms. Shoched's job. More specifically, sexually graphic comments, jokes re: women are told at virtually every training session and national sales meeting; male managers routinely discuss female sales representatives' body parts in a derogatory, sexually explicit manner and discuss the female sales representatives with whom the managers want to have sex. During a national meeting in San Antonio, Brian Barcelona told a story about a woman shoving a potato into her vagina as a birth control device. Ms. Shoched was offended and complained about this comment to Pamlab management. No action was taken. Ms. Shoched has complained about these jokes and derogatory comments to supervisors, but Pamlab has not taken any action to rectify these issues.

## 2.    Title VII Religious Discrimination and Harassment

Ms. Shoched is Jewish. Throughout her employment with Pamlab, numerous offensive jokes regarding Ms. Shoched's religion have been told, and Ms. Shoched has been advised that she will never be promoted because she is a Jew. Ms. Shoched has

complained to her supervisors and to Human Resources regarding these matters, but Pamlab still refuses to correct this situation.

Further, national level managers and directors have told Ms. Shoched that the only reason she is a good salesperson is that she is a "Dirty Jew," and that she will never be promoted at Pamlab even though her performance has been outstanding.

### 3.    Retaliation for Participating in Title VII Proceeding

Like Lee Ingles, Dana Shoched has been retaliated against for her participation in the *Carleen Black* employment discrimination case. As outlined above, Ms. Shoched testified under subpoena during Ms. Black's June 2009 trial in Austin, Texas. The week before Ms. Shoched testified, she went on a "ride along" with her current supervisor (CJ Rothacher) and was told that her sales numbers were good and her percentages were where they should be. After Ms. Shoched's trial testimony, which supported and confirmed Ms. Black's claim of discrimination, when the official sales report came out, Ms. Shoched was dropped to #2 in her district (she had been #1), and she moved from 17th in the national sales force to 59th. Ms. Shoched complained about these events to her supervisor, but no action (other than to continue to retaliate against Ms. Shoched) was taken.

Further, after her trial testimony, Ms. Shoched was told that she would not be paid by the company for her time off for attending trial (even though she was subpoenaed), and that she would have to use her vacation time, despite the fact that male employees (namely Joseph Redding) whom Pamlab brought to trial were not required to use their

vacation time.  On June 22, 2009, Ms. Shoched was reprimanded by her supervisor, C.J. Rothacher, for coming to trial to testify in a Title VII proceeding.

Since her trial testimony, Ms. Shoched has been continually ostracized and harassed for her participation in the *Black* case.  Her supervisor refuses to provide any meaningful assistance, and there is no question that she is being treated differently than other Pamlab employees who did not provide testimony in an ongoing Title VII proceeding.  Ms. Shoched has complained to her supervisor and to human resources numerous times, but the situation has not been remedied.

Eventually, the most blatant example of post-testimony retaliation against Ms. Shoched came directly from Sam Camp himself.  During the latter part of the summer of 2009, Mr. Camp called Ms. Shoched out of a national training session and chastised her for testifying in Carleen Black's case.  Ms. Shoched explained to Mr. Camp that she only told the truth at trial.  Mr. Camp stated that he did not care.  He then demanded that Ms. Shoched write a letter to Judge Lee Yeakel and to members of the jury stating that she had lied at trial.  When Ms. Shoched refused to perform this illegal act, Mr. Camp told Ms. Shoched that he "did not see how she could continue to work" for Pamlab.  Ms. Shoched complained about this to Jim Hendry, Vice-President of Human Resources.  Mr. Hendry did not take any action against Mr. Camp, and Ms. Shoched continues to be retaliated against and harassed.

### 4.    Intentional Infliction of Emotional Distress

Ms. Shoched is a lesbian.  Although sexual preference or sexual orientation is not protected under Title VII, certain states recognize "gap filler" torts which will encompass

Pamlab's actions in this regard (this will be discussed in more detail in Section VI below). During Carleen Black's case, evidence was obtained that Pamlab managers and officers (including but not limited to Stephen Camp and Tracy Johnson) repeatedly refer to Ms. Shoched as such things as "queer," "dyke," and "butch."

It is common knowledge at Pamlab that Tracy Johnson berated and humiliated Ms. Shoched in front of an entire table of people regarding her sexuality at the Pamlab National Sales Meeting at Amelia Island. Further, Ms. Shoched's supervisors (Davis and Barcelona) have made repeated derogatory comments regarding Ms. Shoched's sexual preference. Ms. Shoched is even forced to have her own room at national sales meetings because Stephen Camp, Walter Pullen, and Brian Barcelona have stated that if she shares a room with another woman, she will try to sleep with whomever she roomed, even though Ms. Shoched is in a long-standing relationship with an individual who is not and has never been an employee of Pan American or Pamlab. These men have also made comments in Ms. Shoched's presence that they would "love to see some girl on girl action." If there were ever actions taken that epitomize the intentional infliction of emotional distress, it is the actions of Pamlab's managers, officers, and directors in relation to Ms. Shoched's sexual orientation.

### 5.     Constructive Discharge for Refusal to Perform Illegal Act

When Sam Camp instructed Ms. Shoched to write a letter containing lies to a sitting Federal District Judge, he asked her to commit an illegal act. When she refused, he essentially stated that Ms. Shoched could no longer work for Pamlab. Mr. Camp and Pamlab's treatment of Ms. Shoched since that time constitute a constructive discharge,

which an employer has no right to do if the reason for the discharge is an employee's refusal to perform an illegal act.

### B.   Defendants' Illegal Actions Involving Lee Ingles

Pan American Laboratories/Pamlab, LLC is a pharmaceutical company, which has its corporate office in Covington, LA. However, Pamlab employs pharmaceutical sales representatives in various states across the country, including Texas. Lee Ingles began working for Pamlab in 1998 as the Office Manager. Within a short time, Ms. Ingles was promoted to Director of Human Resources.

### 1.   Retaliation for Participating in Title VII Proceeding

On January 23, 2009, Ms. Ingles gave a deposition in the *Carleen Black* employment discrimination case referenced above. During her deposition, Ms. Ingles answered questions truthfully and testified that certain actions committed by Pamlab were illegal and violated Title VII. Ms. Ingles' deposition testimony was later used during court proceedings (during March 2009) and at trial (June 2009) in the *Black* case. Within one month after Ms. Ingles' deposition testimony was used during the *Black* court proceedings (3/13/09), Ms. Ingles was told by Stephen Camp (Nat'l VP Sales and Sam Camp's son) that she was on the "short list" to be fired. Ms. Ingles was also demoted from her position, and a younger male was brought in to be Ms. Ingles' supervisor and was given the title of Vice-President of Human Resources.

### 2.    Discrimination Based on Race and Sex (also led to Retaliation)

On March 14, 2009, Ms. Ingles met with Pamlab's President, Sam Camp, to discuss her job and concerns about discrimination.  During this meeting, Ms. Ingles complained about racial harassment (statements made by Sam Camp in a training session) involving a male sales representative (Brian Kulcsar) who looks Hispanic.  Ms. Ingles had previously investigated this incident for Human Resources and confirmed that the racially harassing statements had indeed occurred.  When Ms. Ingles questioned Mr. Camp about the racially discriminatory and harassing incident involving Brian Kulcsari, Mr. Camp stated that he did not like how Ms. Ingles was running the Pamlab Human Resources Department and that he was considering terminating Ms. Ingles.

During Ms. Ingles' March 14, 2009 meeting with Sam Camp, Ms. Ingles also complained about Pamlab's lack of compliance with its federally mandated affirmative action plan (which is required since Pamlab contracts with governmental entities) with respect to hiring and promoting women and minorities.  Ms. Ingles told Mr. Camp Pamlab must have a gender/race neutral hiring and promotion policy, but Sam Camp stated, "the government ha[s] too many laws and the company [can] not be successful if it follows all of the government's laws."  Mr. Camp stated that the way he intended to run Pamlab to make it successful was to only hire White Christian males between the ages of 25-35, who are married and who own their own homes.  Ms. Ingles opposed Mr. Camp's hiring directives and stated that Pamlab's recruiting department (headed by Stephanie Hutchinson) and Human Resources has an obligation to continue to recruit/hire in accordance with the gender/race neutral affirmative action plan.  Throughout April and May, Ms. Ingles continued to have problems with Mr. Camp.  On April 1, Tracy Johnson

(male), one of Pamlab's National Directors, resigned.   Later that month, Human Resources was asked to provide false information regarding Mr. Johnson's resignation for COBRA insurance purposes.   Then, on May 13, Human Resources was again asked by Mr. Camp to provide false information to Wells Fargo Bank to verify employment for Tracy Johnson.  Ms. Ingles complained about these illegal practices (and the fact that her department had been instructed to perform illegal acts) to Pamlab's Vice-President of Legal Affairs (Keith Daigle) and to the Company CEO (Eric Wingerter).  On May 18, Pamlab's response to Ms. Ingles was essentially that she was being demoted and that a new Vice-President of Human Resources was being hired (a younger White male who is the son of Sam Camp's close friend).   Mr. Daigle and Mr. Wingerter also told Ms. Ingles that Sam Camp wanted to fire Stephanie Hutchinson, the recruiting director who also complained about these illegal practices regarding Tracy Johnson.  Instead, the company decided to offer Stephanie a demotion and nearly a 50% pay cut, hoping she would resign.  Ms. Ingles explained that she felt this was discriminatory, and asked to speak directly to Sam Camp.  Ms. Ingles' requests were denied.  She was told that Mr. Camp would not change his mind and that Pamlab would continue to be run just as Mr. Camp arrogantly directed, regardless of whether the company's actions were illegal.

### 3.    Constructive Discharge

During Ms. Ingles' March 14, 2009 meeting with Sam Camp, Mr. Camp made it clear that, unless Ms. Ingles helped perpetuate the corporate culture of discrimination, Ms. Ingles had no future with Pamlab.  Since Ms. Ingles' refused to cooperate with and refused to foster Mr. Camp's discriminatory corporate environment, Ms. Ingles has been

ostracized and, effectively, demoted to the point where Pamlab's actions constitute constructive discharge based on Ms. Ingles' refusal to perform an illegal act.

## V.

## EXHAUSTION OF PRE-SUIT ADMINISTRATIVE REMEDIES

Prior to filing suit, Plaintiffs submitted their claims of employment discrimination to the Federal Equal Employment Opportunity Commission, as well as to the Texas Workforce Commission Civil Rights Division.  The EEOC also submitted the claims to the Louisiana Commission on Human Rights.  On January 5, 2010, the EEOC issued Plaintiffs notice of their right to sue in either state or federal court (copies of the right to sue letters are attached).  Therefore, Plaintiffs have complied with all prerequisites necessary for the filing of this lawsuit.

## VI.

## CAUSES OF ACTION

A.    **Violations of the Texas Labor Code**

1.    **Texas Labor Code Section 21.051**

Plaintiffs adopt and incorporate by reference as if set forth in full all allegations and facts contained in Section V above.

Section 21.051 of the Texas Labor Code prohibits employers from discriminating against individuals on the basis of race, sex, religion, national origin, or disability.  As outlined above, Defendants discriminated against Lee Ingles and Dana Shoched on the basis of their sex (female).  Further, Defendants discriminated against Ms. Shoched on

the basis of her religion (Jewish).  Defendants also created a sexually hostile environment for Ms. Shoched based on the sexually inappropriate, vulgar comments referenced above. Defendants' discriminatory conduct towards Ms. Ingles and Ms. Shoched proximately caused Plaintiffs' damages.

### 2.      Texas Labor Code Section 21.055

For purposes of this section, Plaintiffs adopt and incorporate by reference as if set forth in full all allegations and facts contained in Section V above.  As outlined above, when Ms. Ingles and Ms. Shoched complained about the discriminatory activities occurring within Pamlab, and after they testified in a Title VII proceeding, adverse employment actions were taken against them, up to and including constructive discharge. Such action by Defendants constitutes retaliation as defined under section 21.055 of the Texas Labor Code.  This type of egregious employment practice is statutorily prohibited, and it was a proximate cause of Plaintiffs' injuries and damages.

### B.      Violations of Title VII of the Civil Rights Act of 1964

### 1.      Title VII Section 2000e-2

For purposes of this section, Plaintiffs adopt and incorporate by reference as if set forth in full all allegations and facts contained in Section V above.  Like the Texas Labor Code, Title VII of the Civil Rights Act of 1964 (codified at 42 USC 2000e, *et seq.*) prohibits certain employment practices.  Section 2000e-2(a) prohibits discrimination based on an individual's race, color, religion, sex, or national origin.  Similarly, section 2000e-2(b) prohibits segregation or classification of employees in any manner that would

deprive or tend to deprive the employee of opportunities based on race, sex, color, religion, or national origin. As outlined above, Defendants discriminated against Ms. Ingles and Ms. Shoched on the basis of their sex (female), and against Ms. Shoched on the basis of her religion (Jewish). Defendants also created and subjected Plaintiffs to a sexually hostile environment that a reasonable person would find offensive. Defendants are, therefore, liable to Plaintiffs for these wrongful acts which proximately caused Plaintiffs' damages.

### 2.    Title VII Section 2000e-3

For purposes of this section, Plaintiffs adopt and incorporate by reference as if set forth in full all allegations and facts contained in Section V above. Also like the Texas Laobr Code, Title VII contains an anti-retaliation provision. Title VII Section 2000e-3 specifically prohibits an employer from making an adverse employment decision (such as demotion, reprimand, or termination) based on the employee's report of or participation in an investigation regarding discriminatory conduct in the work place. In this case, both Ms. Ingles and Ms. Shoched made complaints of and participated in investigations (and other lawsuits) regarding the illegal activities and discriminatory conduct occurring within Pan American/Pamlab. As soon as these complaints were made, adverse employment action was taken against Plaintiffs. This is the essence of retaliation under both state and federal law, and it subjects Defendants to liability for their egregious and abhorrent actions.

### C.   <u>Intentional Infliction of Emotional Distress</u>

In addition to the statutory causes of action set forth above, Dana Shoched has a common law claim for intentional infliction of emotional distress (IIED) for Defendants' actions related to Ms. Shoched's sexual orientation.  Ms. Shoched recognizes that sexual orientation is not *yet* protected by Title VII.  However, as the Texas Supreme Court has recognized, IIED is a gap-filler tort which provides a narrow cause of action in circumstances where another statutory or common law claim does not apply.  *See Hoffmann La-Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004); *Bryant v. Lucent Technologies*, 175 S.W.3d 845, 849 (Tex. App.—Waco 2005, pet. denied) (citing *Tiller v. McLure*, 121 S.W.3d 709, 715 (Tex. 2003)); *see also Oberkramer v. IBEW-NECA Service Center*, 151 F.3d 752 (8th Cir. 1998) (discussing analysis of when federal employment statutes preempt state common law claim for IIED).  Defendants' actions regarding Ms. Shoched's sexual orientation do not relate to and are separate and distinct from Defendants' actions under Title VII, and an analysis of Title VII is not even necessary to determine whether Ms. Shoched has a cognizable claim for IIED.  Defendants' actions regarding Ms. Shoched's sexual orientation were intentional, were committed by Defendants' vice-principals, and were ratified by Defendants' corporate level managers and officers.  These acts were extreme, outrageous and were done for the purpose of causing Ms. Shoched to suffer extreme emotional distress.  Defendants' actions in causing Ms. Shoched to suffer severe emotional distress proximately caused damages for which Ms. Shoched should be compensated.  More specifically, Defendants' actions have escalated to the point where Ms. Shoched recently had to take disability

leave because her physicians and counselors have stated that the stress caused by Pamlab has made it physically and emotionally impossible for Ms. Shoched to function at work.

### D.    Constructive Discharge for Refusal to Perform Illegal Act

Texas law also recognizes an exception to the employment at will doctrine in cases in which an employee is discharged (either actually or constructively) for refusing to perform an illegal act. This cause of action is not governed by Title VII or the Texas Labor Code, but is instead a common law creation of Texas courts, and it is within the purview of the United States District Court under the doctrine of supplemental jurisdiction. In this case, Dana Shoched refused to perjure herself before a federal district judge (in the *Carleen Black* case) when it was demanded of her by Pamlab's President, Sam Camp. When Ms. Shoched refused to perform this illegal act, Mr. Camp told Ms. Shoched that he "did not see how she could continue to work for Pamlab." This statement, along with Pamlab's unconscionable treatment of Ms. Shoched since this incident (which has rendered her work environment utterly intolerable) amounts to a constructive discharge based on Ms. Shoched's refusal to perform an illegal act. Defendants' actions rise to the level of a *Sabine Pilot* claim for which damages are legally authorized.

### VII.

### DAMAGES

Based on the causes of action set forth above, Plaintiffs seek the following elements of damage, which are in excess of the court's minimum jurisdictional limits:

- Lost wages (Back pay and Front pay);

- Lost Employment benefits, including but not limited to loss of bonuses, vacation pay, retirement contributions, insurance benefits, and other similar benefits;

- Emotional distress/mental anguish in the past and future; and

- Attorneys' Fees pursuant to Tex. Labor Code section 21.259 and 42 USC 2000e-5(k).

Further, because Defendants' actions were committed with malice, as that term is defined and understood in Texas law, Defendants are liable for exemplary damages. Specifically, Defendants acts were extreme, outrageous, and done with conscious, blatant disregard for the rights of Plaintiffs and others similarly situated.  An award of exemplary damages is, therefore, legally authorized and warranted in order to deter Defendants from engaging in this type of abhorrent conduct in the future.

## VIII.

### JURY DEMAND

Plaintiffs request a jury trial on all issues in this case.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, Dana E. Shoched and Deborah Lee Ingles, pray that this Court cite Defendants to appear, and that after notice and hearing, the Court will enter judgment in favor of Plaintiffs on the causes of action outlined above.  Plaintiffs further pray that the Court order Defendants to pay all of Plaintiffs' attorneys' fees and costs of court as authorized by law, and for all such other

and further relief, general or special, legal or equitable, to which Plaintiffs may be justly entitled.

Respectfully submitted,

BEST & SPRUILL, P.C.

_Delta S. Best_
DELTA S. BEST   (SBN 02263900)
ALLISON L. SPRUILL  (SBN 00789644)
6805 N. Capital of Texas Hwy. #330
Austin, TX  78731
Telephone:  (512) 257-2104
Facsimile:   (512) 250-2058

ATTORNEYS FOR PLAINTIFFS,
DANA E. SHOCHED AND
DEBORAH LEE INGLES

18